IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHAWN LAMONT ELAM, ) | |
| ) | |
| PLAINTIFF, ) | No. 3:14-cv-01801 |
| ) | Judge Trauger/Brown |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| DEFENDANT. ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (the record) (Docket Entry 14) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I. Procedural History

Plaintiff filed for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on July 27, 2010. (Docket Entry 10, pp. 77-78).[1] He claimed an onset date of September 30, 2009 and disability due to: constant pain, nerve damage in his leg, a bad back, high blood pressure, and high cholesterol. (Docket Entry 10, pp. 157; 164). The Commissioner denied his claims on initial review and reconsideration. (Docket Entry10, pp. 81; 93-99). Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Docket Entry 10, p. 100). On January 11, 2013, Plaintiff appeared before ALJ, David Ettinger. (Docket Entry 10, p. 35). Also appearing were Plaintiff's attorney, Lindsey Ralston and the vocational expert (VE), Michelle McBroom-Weiss. (Docket Entry 10, p. 35).

---

1 Page numbers referring to the record herein reflect the Bates Stamp.

At the hearing, the ALJ clarified that Plaintiff's date last insured was September 30, 2009. (Docket Entry 10, p. 38). The ALJ also clarified that Plaintiff had filed a prior claim for DIB and SSI, which another ALJ denied on June 28, 2010. (Docket Entry 10, pp. 62-76). Therefore, Plaintiff could not claim that his disability began before June 28, 2010 and, in light of his 2009 date last insured, Plaintiff withdrew his request for a hearing on his Title II DIB claim. (Docket Entry 10, p. 39). However, since a SSI claim is not dependent on date last insured, the ALJ proceeded with Plaintiff's Title XVI SSI claim, although he ultimately found that Plaintiff was not disabled under Title II or Title XVI of the Social Security Act (the Act). (Docket Entry 10, pp. 24; 39; *See* 20 C.F.R. § 416.335). Finally, the Appeals Council denied Plaintiff's request for review. (Docket Entry 10, p. 1).

On September 04, 2014, Plaintiff, proceeding *in forma pauperis*, timely brought the instant action. (Docket Entry 1). The District Judge referred this case to the Magistrate Judge. (Docket Entry 3). Defendant filed its Answer and the record. (Docket Entry 9-10). On January 13, 2015, Plaintiff filed a Motion for Judgment on the Record seeking review of the final decision of the ALJ pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Docket Entry 14). Defendant has filed a Response. (Docket Entry 15). Therefore, the matter is properly before the Court.

## II.     Review of the Record

The medical evidence consists of almost 500 pages of records, reports, and Medical Source Statements. (Docket Entry 10, pp. 240-733). In light of this and the nature of Plaintiff's claims of errors, the relevant evidence is incorporated directly into the Analysis below.

### A.     Plaintiff and Witness Testimony

Plaintiff's attorney gave an opening statement to the ALJ and stated that Plaintiff "has had several MRIs which showed pretty severe findings." (Docket Entry 10, p. 40). Then,

Plaintiff proceeded to testify that he has not been able to work because of problems in his back, leg, and hip. (Docket Entry 10, p. 41). He testified that his doctors prescribe him pain medication and that his mother helps him with household chores. (Docket Entry 10, p. 42). He testified that he would not be able to stand at a job due to pain and that he would not be able to sit at a job because of problems in his back and his leg. (Docket Entry 10, p. 44). He testified that he could sit for fifteen to twenty minutes and that during a three hour school performance in which his daughter participated, he alternated sitting and standing. (Docket Entry 10, p. 44).

Plaintiff testified that he has carpal tunnel syndrome, that he can pick up a coffee cup, and that he does not use a computer. (Docket Entry 10, p. 45). He denied problems with his medications. (Docket Entry 10, p. 47). He testified that he receives Prozac at Centerstone. (Docket Entry 10, p. 47). He testified that he also has sleep apnea and experiences depression. (Docket Entry 10, pp. 48-50).

### B. Vocational Expert Testimony

The ALJ reviewed the past work of Plaintiff. (Docket Entry 12, pp. 51-52). The ALJ then asked the VE to consider a hypothetical person of the same age as Plaintiff, with an eleventh grade education and the same work experience as Plaintiff. (Docket Entry 10, p. 52). The hypothetical person would be limited to light work and would need to avoid respiratory irritants or extreme temperatures. (Docket Entry 10, p. 52). The VE testified that Plaintiff could possibly perform past work as a grill cook and could perform past work as a server under this hypothetical. (Docket Entry 10, p. 53). The VE also listed other available jobs under this hypothetical, including a cashier, sales attendant, and inspector. (Docket Entry 10, p. 53).

Then, the ALJ asked the VE to consider the additional limitations of someone who:

[C]ould not stand or walk for more than four hours during the workday; could not more than frequently push, pull, handle, or finger with the left arm and hand; could not climb

ladders; could not more than occasionally climb stairs, balance, stoop, kneel, crouch, or crawl; and needed to avoid concentrated exposure to hazardous work environments.

(Docket Entry 10, pp. 53-54). The VE testified that the position of cashier and inspector would still be available, albeit at reduced numbers. (Docket Entry 10, p. 54). Finally, the ALJ asked the VE to consider a hypothetical person with the same limitations already mentioned but "limited to no more than sedentary work." (Docket Entry 10, p. 54). The VE testified that there would be available jobs under this hypothetical, including an operator, a food and beverage clerk, and a security systems monitor. (Docket Entry 10, pp. 54-55).

Then, the ALJ asked the VE to consider the limitations of being unable to "carry out complex or detailed instructions; being unable to . . . maintain attention or concentration for more than two hours . . . ; and [being] unable to have more than frequent interaction with the public, supervisors, or co-workers." (Docket Entry 10, p. 55). The VE testified that the position of inspector and security system monitor would still be available. (Docket Entry 10, p. 56).

Plaintiff's attorney then presented a hypothetical to the VE in which the person would be able to sit, stand, and walk for one hour each at a time; would be unable to perform any postural activities; and would need a cane throughout the day. (Docket Entry 10, pp. 56-57). The VE testified that the Plaintiff could not perform past work with those limitations, but the positions of a security system monitor, an operator, and a food and beverage clerk would still be available. (Docket Entry 10, p. 57). However, if a person was off task twenty percent of the day due to standing and stretching, those jobs would be unavailable. (Docket Entry 10, p. 58).

Finally, the ALJ and the VE discussed the term, "stooping" and whether sitting requires the ability to stoop, *i.e.* bend forward at the waist. (Docket Entry 10, pp. 58-59). The VE clarified that under the hypotheticals, a person who could not sit could not perform the jobs listed.

(Docket Entry 10, p. 59). The VE noted that the security monitor job would be available even if an individual needed to stand every hour. (Docket Entry 14-1, pp. 58-59).

### III. Analysis

#### A. Standard of Review

The issue before the Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), is limited to whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards. *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 434 (6th Cir. 2010) (unpublished opinion) (quoting *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carrelli*, 390 F. App'x at 434 (quoting *Cutlip,* 25 F.3d at 286). The Court "may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Carrelli*, 390 F. App'x at 434. If there is "substantial evidence" in the record that supports the ALJ's decision and the ALJ applied the correct legal standard, then the Court must affirm the final decision, "even if the Court would decide the matter differently, and even if substantial evidence also supports the [Plaintiff's] position." *Carrelli*, 390 F. App'x at 434 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc)).

#### B. Administrative Proceedings

Disability is defined for Title II DIB and Title XVI SSI claims as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A) and

1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1505 and 416.905. The ALJ uses a 5-step evaluation for both DIB and SSI claims to determine whether the Plaintiff meets this definition of "disabled."

   i. If the plaintiff is engaged in substantial gainful activity, the Court will find that the plaintiff is not disabled.

   ii. If the plaintiff *does not* have a severe medically determinable physical or mental impairment meeting the duration requirement or a combination of such impairments, the Court will find that the plaintiff is not disabled.

   iii. If the plaintiff *does* have an impairment(s) that meets or equals one of the listings of impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (Appendix 1) and meets the duration requirement, the Court will find that the plaintiff is disabled.

   iv. The court considers the plaintiff's RFC and past relevant work. If the plaintiff can still perform her past relevant work, the Court will find that she is not disabled.

   v. The Court considers the plaintiff's RFC, age, education, and experience to determine if the plaintiff can perform work *other than* past relevant work. If the plaintiff can make an adjustment, the Court will find that she is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). The plaintiff has the burden of proof for steps 1 to 4. *Carrelli*, 390 F. App'x at 435. The burden shifts to the ALJ at step 5, where the ALJ must "identify a significant number of jobs in the economy that accommodate the [plaintiff's] RFC and vocational profile." *Carrelli*, 390 F. App'x at 435 (citation omitted).

### C. Notice of Decision

On March 15, 2013, the ALJ made the findings of fact and conclusions of law below.

1. The claimant has not engaged in substantial gainful activity since June 29, 2010, the alleged onset date (20 C.F.R. §[§ 404.1571 *et seq*. and] 416.971 *et seq.*).

2. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, obesity, chronic bronchitis, and bilateral carpal tunnel syndrome (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4. [T]he claimant has the [RFC] to perform sedentary work . . . except that he cannot more than frequently push, pull, handle or finger with the left arm and hand. He cannot climb ladders, cannot more than occasionally climb stairs, balance, stoop, kneel, crouch or crawl. He can tolerate occasional exposure to temperature extremes, respiratory irritants, and hazardous work environments.

5. The claimant is unable to perform past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

6. The claimant was . . . a younger individual . . . on the alleged onset date (20 C.F.R. §§ 404.1563 and 416.963).

7. The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

8. Transferability of job skills is not material to the determination of disability . . . . (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

9. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404. 1569(a), 416.969, and 416.969(a)).

10. The claimant has not been under a disability . . . from September 30, 2009 through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(Docket Entry 10, pp. 15; 17-18; 22-23). The ALJ also made the specific decision:

1. [T]he claimant is not disabled under sections 216(i) and 223(d) of the Act.

2. [T]he claimant is not disabled under section 1614(a)(3)(A) of the Act.

(Docket Entry 12, p. 24).

### IV. Claims of Error

#### A. The ALJ Erred by Failing to Consider all of Plaintiff's Impairments and by Failing to Provide Sufficient Reasoning.

Plaintiff argues that the ALJ failed to consider his other purported impairments, including: "[high blood pressure]; right leg osteoarthritis; adjustment disorder . . . ; mood disorder . . . ; generalized anxiety disorder; and idiopathic peripheral neuropathy, NOS." (Docket Entry 14-1, p. 7). Plaintiff also argues that the ALJ noted Plaintiff's GAF score of 51 and "then

used this GAF score to support [his] finding that the [Plaintiff] did not have a severe mental impairment." (Docket Entry 14-1, p. 7).

The ALJ determines whether a plaintiff's impairment or combination of impairments is severe at the second step of the disability determination. 20 C.F.R. §§ 404.1520 and 416.920(a)(4)(ii). The ALJ will find that "[a]n impairment or combination of impairments is ***not severe*** if it does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) and 416.921(a) (emphasis added). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) 416.921(b). "In this circuit, the [plaintiff's] burden of proof at step two 'has been construed as a *de minimis* hurdle . . . [A]n impairment can be considered not severe only if it is a slight abnormality that *minimally* affects work ability regardless of age, education, and experience.'" *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 774 (6th Cir. 2008) (unpublished opinion) (citing *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988)). [2]

When the ALJ evaluates a medical opinion pertaining to a mental impairment, the ALJ must follow a "special technique" to evaluate, specify, rate, and record. 20 C.F.R. §§ 404.1520a(b)(1)-(2) and 416.920a(b)(1)-(2). The ALJ must evaluate the plaintiff's "symptoms, signs, and laboratory findings to determine whether [the plaintiff] has a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1). Next, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) . . . ." 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1). Then, the ALJ must rate

---

2 Plaintiff argues that "[t]he Sixth Circuit, ***from time immemorial***, has held that 'the step two severity regulation . . . has been construed as a *de minimis* hurdle in the disability determination process . . . .'" (Docket Entry 14-1, p. 7) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)) (emphasis added). The Magistrate Judge notes that "from time immemorial" pertains to something in the distant past. This Sixth Circuit case is from the rather recent year of 1988. Moreover, this argument continually appears in the filings of Plaintiff's counsel who, with all due respect, could produce a new pony or a new trick occasionally.

the functional limitations in activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). Finally, the ALJ must record the "significant history . . . examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §§ 404.1520a(e)(4) and 416.920a(e)(4).

Here, Plaintiff argues that his other purported impairments "cause additional limitations which affect [his] ability to perform at the RFC assigned to him." (Docket Entry 14-1, p. 7). However, this argument leaves the Magistrate Judge to sift through the record is search of what those limitations are and then decipher whether the ALJ considered them. The Magistrate Judge need not engage in such an expedition. Even the *pro se* standard of liberal construction draws a line at requiring a Court to conjure up an argument and Plaintiff is not *pro se*. *Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004).

Nonetheless, the record shows that the ALJ found that Plaintiff has the severe impairments of degenerative disc disease, obesity, chronic bronchitis, and bilateral carpal tunnel syndrome. (Docket Entry 10, p. 15). As the ALJ explained, "[t]hese impairments are established by the medical evidence and are 'severe'. . . ." (Docket Entry 10, p. 16). As to Plaintiff's other purported impairments, the record shows no medical evidence to support that they are severe. The ALJ considered Plaintiff's July 30, 2010 medical records and Plaintiff's reports therein of right leg pain, neuropathy and high blood pressure. (Docket Entry 10, p. 18). The ALJ also considered Plaintiff's 2012 medical records, which continued to reflect his leg pain and neuropathy. (Docket Entry 10, p. 19) However, the record shows that the ALJ found no evidence of work-related limitations in these medical records. (Docket Entry 10, p. 16). Instead, Plaintiff

reported to the provider on July 30, 2010 that he was able to ambulate with a cane and that his prescribed medication was "effective for pain relief." (Docket Entry 10, p. 253). On November 27, 2012, the medical records show that Plaintiff continued to have peripheral neuropathy. (Docket Entry, p. 721). However, again, the provider did not record any work-related limitations. (Docket Entry 10, p. 721).

The ALJ also used the "special technique" to consider Plaintiff's purported mental impairment. He evaluated the findings from Centersone, including the reports of Dr. Bachuss, and Dr. Carruthers. (Docket Entry 10, pp. 16-17; pp. 432-671). He specified that Plaintiff "was consistently rated at 51 on the Global Assessment of Functioning [GAF] scale." (Docket Entry 10, p. 17). Yet, as the ALJ noted, "[t]he treatment notes do not suggest the presence of any significant work-related mental limitations and no medical source has indicated the existence of such limitations." (Docket Entry 10, p. 17). Records from Plaintiff's treatment at Centerstone show a GAF score of 51 as the highest score on November 23, 2011. (Docket Entry 10, p. 446). On the same date, Dr. Bachuss noted that Plaintiff "asks if this provider would help him get disability. When this provider says there doesn't appear to be a psychiatric reason for disability, [Plaintiff] asks, "can't you say I'm crazy?" (Docket Entry 10, p. 443). Nonetheless, the ALJ completed the "special technique." (Docket Entry 10, pp. 16-17). He rated Plaintiff's limitations, finding at most mild ones, and recorded the specific limitations that he considered in concluding that Plaintiff's mental impairment is not severe. (Docket Entry 10, pp. 16-17).

Therefore, there is substantial evidence to support the ALJ's finding that Plaintiff's "[high blood pressure]; right leg osteoarthritis; adjustment disorder . . . ; mood disorder . . . ; generalized anxiety disorder; and idiopathic peripheral neuropathy, NOS" were not severe. Moreover, there is substantial evidence to show that the ALJ relied on more than the GAF score,

namely the medical source evidence, in evaluating Plaintiff's mental limitations. Finally, there is substantial evidence to show that the ALJ clearly articulated his reasoning behind his findings.

### B. The ALJ Erred by Failing to Include a Function-by-Function Assessment.

Plaintiff argues that the ALJ failed to perform a "function-by-function" assessment under SSR 96-8P, and that the ALJ failed to provide limitations regarding Plaintiff's right hand despite finding bilateral carpal tunnel syndrome to be a severe impairment. (Docket Entry 14-1, p. 8).

Pursuant to SSR 96-8P, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including physical, mental, and other abilities." 20 C.F.R. §§ 404.1545(b)-(d) and 416.945(b)-(d). The ALJ must "first assess the nature and extent of [the Plaintiff's] . . . limitations and then determine [the Plaintiff's] [RFC] . . ." and must do so based on the entire record. 20 C.F.R. §§ 404.1545 and 416.945.

Here, the record shows that the ALJ considered the entire record and completed a "function-by-function" analysis before determining the RFC. The ALJ considered Plaintiff's medical records and history, the examiners' reports, the Medical Source Statements, and Plaintiff's testimony. (Docket Entry 10, pp. 15-22). Regarding Plaintiff's right hand, the ALJ noted the opinion of consultative examiner, Dr. Davis. (Docket Entry 10, p. 22). The ALJ noted that while some of the limitations in Dr. Davis' Medical Source Statements "can be correlated with the narrative report, others cannot." He explained that "[f]or example, Dr. Davis' opinion that the [Plaintiff] can only frequently use his left arm to handle or reach, including overhead, appears related to his examination finding that the [Plaintiff's] left thumb was painful and tender and that the [Plaintiff] had only 3-4/5 grip strength with the left hand." (Docket Entry 10, p. 22). However, in contrast, Dr. Davis' "opinion that the [Plaintiff] is limited in using his right hand

does not correspond to any reported findings." (Docket Entry 10, p. 22). In light of this medical evidence and the remainder of the record, the ALJ did not limit Plaintiff's use of his right hand when determining Plaintiff's RFC. (Docket Entry 10, p. 18).

The Magistrate Judge notes that the Medical Source Statement of Dr. Davis actually indicates that Plaintiff was limited to occasional use of his left hand for handling, fingering, feeling, pushing or pulling. (Docket Entry 10, p. 280). However, Plaintiff does not contest the RFC as it pertains to the left hand and, moreover, the ALJ explained that he did not give Dr. Davis' opinion significant weight because "[h]e provided no significant narrative comments . . . and referred to no abnormal findings supporting his opinions." (Docket Entry 10, p. 22). Therefore, the record provides substantial evidence to support the ALJ's conclusion that the RFC did not need further limitations in light of the objective medical evidence.

### C. The ALJ Erred by Failing to Consider Plaintiff's Obesity.

Plaintiff argues that although the ALJ found Plaintiff's obesity to be a severe impairment, he failed to meet the requirements of SSR 02-1P and his "analysis of the [Plaintiff's] obesity was insufficient." (Docket Entry 14-1, p. 9).

SSR 02-1P provides guidance on the evaluation of obesity. SSR 02-1P, 2000 WL 628049. At the second step of the disability determination, the ALJ will "generally rely on the judgment of a physician who has examined the [plaintiff] and reported his or her appearance and build, as well as weight and height" in order to identify obesity as a medically determinable impairment. SSR 02-1P at *3. At the third step of the disability determination, the ALJ considers if obesity meets the requirements of a listing in Appendix 1 (the listings) and if obesity is medically equivalent to a listing. SSR 02-1P at *5. At the fourth and fifth steps, the ALJ

considers obesity in assessing RFC and must explain how he reached a conclusion "on whether obesity caused any physical or mental limitations." SSR 02-1P at *7.

Here, the record shows that the ALJ found that Plaintiff's "obesity, independently or in concert with another impairment" fails to meet or equal any listing. (Docket Entry 10, p. 18). The record also shows that the ALJ noted Plaintiff's height and weight of 5 feet and 8 inches and 230 pounds and his diagnosis of obesity as reported by Dr. Davis on November 11, 2010. (Docket Entry 10, pp. 18-19; Docket Entry 10, pp. 275-76). The ALJ documented a note from November 9, 2012 when Plaintiff presented to the Emergency Department and although he "was in no apparent distress, . . . a note was made to indicate that the [Plaintiff] is obese." (Docket Entry 10, p. 19). Plaintiff remained 5 feet and 8 inches and 230 pounds. (Docket Entry 10, p. 673). Finally, the ALJ noted that Plaintiff remained 5 feet and 8 inches and 230 pounds on January 09, 2013 when he presented to Dr. Allen. (Docket Entry 10, p. 19). The ALJ noted that he made the RFC determination based on objective medical evidence, other evidence, and opinion evidence. (Docket Entry 10, p. 18). The ALJ also noted that he gave some weight to the testimony of Plaintiff and found that Plaintiff could not meet the requirements of light work. (Docket Entry 10, p. 22).

Therefore, the record provides substantial evidence that the ALJ followed the requirements of SSR 02-1P and properly analyzed Plaintiff's obesity.

### D. The ALJ Erred by Failing to Consider the Opinion of Dr. Bruce Davis.

Plaintiff first argues that the ALJ decreased the weight that he gave to the opinion of Dr. Davis because Dr. Davis' opinion that the Plaintiff can never stoop was inconsistent with the ALJ's observation that Plaintiff remained seated during the hearing. (Docket Entry 14-1, p. 10). Plaintiff next argues that the ALJ "made a finding in the decision that stooping and sitting

require the same abilities and since the [Plaintiff] could assume a seated position at the hearing, he must be able to stoop." (Docket Entry 14-1, pp. 10-11). Finally, Plaintiff argues that if the ALJ had credited Dr. Davis' finding that Plaintiff could never stoop, then "a finding of disabled would apply." (Docket Entry 14-1, p. 11).

First, the record shows that the ALJ gave the opinion of Dr. Davis less weight for several reasons, not solely for the inconsistency between Dr. Davis' opinion and the ALJ's observation at the hearing. (Docket Entry 10, p. 22). As the ALJ notes, Dr. Davis "provided no significant narrative comments on his Medical Source Statement." (Docket Entry 10, p. 22). Moreover, Dr. Davis "referred to no abnormal findings supporting his opinions." (Docket Entry 10, p. 22). Finally, the ALJ noted that "Dr. Davis' opinion that the [Plaintiff] can never stoop . . . is inconsistent with my observation that the [Plaintiff] assumed a seated position throughout his hearing." (Docket Entry 14-1, p. 10). Therefore, Plaintiff's first argument is without merit.

Plaintiff's second argument likewise fails. The record shows that the ALJ did not determine that stooping and sitting require the same abilities. Instead, the ALJ defined the ability to stoop as the ability to "bend the body forward and downward at the waist." (Docket Entry 14-1, p. 22). He cited SSR 85-15 for this definition. SSR 85-15 defines stooping as "bending the body downward and forward by bending the spine at the waist." SSR 85-15, at *7. Moreover, SSR 85-15 provides that "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. SSR 85-15. Here, the ALJ limited Plaintiff's RFC to include sedentary work and limited Plaintiff to occasional stooping. (Docket Entry 10, p. 18). Therefore, Plaintiff's second claim is without merit.

Plaintiff's third argument also fails. The VE clarified that the job of a security monitor would still be available even if an individual needed to stand every hour. (Docket Entry 14-1, pp. 58-59). Moreover, a finding of disability is a decision reserved for the ALJ, not mandated based on a single opinion. 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1). Therefore, the record provides substantial evidence that the ALJ did not err in considering the opinion of Dr. Davis.

### E. The Decision is not Supported by Substantial Evidence.

Plaintiff's argument boils down to asserting that the ALJ cannot rely on findings from 2011 on the one hand while noting that Plaintiff's conditions worsened since 2011 on the other hand. Plaintiff argues that, on the one hand, the ALJ "gave weight to and accepted" the 2011 opinions of Dr. Juliao and Dr. Draper regarding Plaintiff's nonexertional limitations. (Docket Entry 14-1, p. 12). Plaintiff argues that, on the other hand, the ALJ found that he was not bound by the prior unfavorable disability decision because of the increase in the severity of Plaintiff's impairments after that decision. (Docket Entry 14-1, pp. 11-12).

To elaborate, Plaintiff argues that the ALJ relied on record exhibits 19F-21F, which showed that Plaintiff's "degenerative disc disease has progressed," and that Plaintiff has "newly diagnosed bilateral carpal tunnel syndrome." (Docket Entry 14-1, p. 12). Plaintiff argues that in light of this reliance, "[t]he ALJ cannot base his finding regarding nonexertional limitations on [the 2011] opinions which were rendered prior to the exact evidence which the ALJ states he is relying on to support his finding that the [Plaintiff] has worsened since the prior decision." (Docket Entry 14-1, p. 12).

However, the record shows that the ALJ accepted the 2011 opinions of Dr. Juliao and Dr. Draper to the extent that they concerned nonexertional limitations. (Docket Entry 10, p. 22).

Meanwhile, the conditions that worsened since 2011 concern Plaintiff's degenerative disc disease and bilateral carpal tunnel syndrome, not Plaintiff's nonexertional limitations.

Therefore, there is substantial evidence to support the ALJ's finding and Plaintiff's argument is without merit.

## V. Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry 14) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

Under Rule 72(b), FED. R. CIV. P., the parties have fourteen (14) days, after being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S. 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this ____day of May, 2015.

s/Joe B. Brown_____
Joe B. Brown
U.S. Magistrate Judge